## WITTE v. WEINBERG.

1. FINDINGS OF FACT—EQUITABLE DEFENCE.—In an action at law, this court cannot consider alleged errors in the findings of fact by the court below. Where, however, an equitable defence is interposed to a legal demand, findings involved in the issue raised by such defence may be reviewed on appeal, but will not be reversed, where there has been concurrence by referee and judge, unless the clear result of the testimony points manifestly to a different conclusion, or there is no testimony to support such findings.

2. IBID.—PAYMENT BY NOTE.—Where dealings between factor and customer had gone on for several successive years, a note given for the balance due at the end of every year, and carried forward into the account of advances for the next succeeding year, and payment of the note for the balance at the end of 1887 was provided for in an agreement made to cover the advances for 1888, this court approved the findings by the master, concurred in by the Circuit Judge, that the account prior to 1888 was paid by this note.

3. USURY—NOTE FOR PAST INTEREST.—A note given in January, 1888, for the balance due on an open account, which included interest at ten per cent.

on advances, the note calling for ten per cent. interest on the principal of the note is not usurious.

4. AGREEMENT—ESTOPPEL.—In January, 1888, a factor sent to his customer to sign an agreement calling for advances by the former to the latter for the ensuing year to an amount not exceeding $7,000, the advances to bear ten per cent. interest per annum. The customer interlined the words, "guanos not included in this," and signed the agreement and returned it, but the factor, while retaining it, declined to accept the modification. Nevertheless, the customer continued to draw and the factor to advance nearly to the amount of $7,000. *Held*, that the customer was estopped from alleging that there was no written agreement for the payment of ten per cent. interest on the advances of that year.

5. USURY—PROOF.—Usury cannot be claimed to exist where it is not made to appear that usurious interest was charged.

6. IBID.—LIQUIDATED DAMAGES.—Advances being made under an agreement calling for the shipment of a specified number of bales of cotton, or the payment of liquidated damages for the number of bales short, such liquidated damages may be recovered under the agreement.

7. IBID.—COUNTER-CLAIM—SAME TRANSACTION.—Where accounts containing usurious interest have been closed and settled by note, and action is brought on the note, the defendant cannot recover double the usury by counter-claim, as the claim did not arise out of the transaction set forth in the complaint, and was not connected with the subject of the action.

8. DAMAGES—PROOF.—A party cannot recover damages of his factor for failing to advance to the full amount agreed to be advanced, where there is no evidence to show any damage.

MR. CHIEF JUSTICE MCIVER *dissenting*.

Before FRASER, J., Darlington, March, 1891.

This was an action by George W. Witte and Armin F. Witte, copartners as Witte Bros., against Abram Weinberg, commenced February 7, 1889. The Circuit decree was as follows:

The case came up on a report of a referee, to whom had been referred all the issues and exceptions on the part of the defendants. Without taking up the exceptions *seriatim*, I will state briefly the conclusions at which I have arrived upon what I consider the material points in the case.

A written agreement in reference to the rate of interest to be paid upon money to be loaned to the defendant by the plaintiffs was sent to the defendant for his signature. It was returned to plaintiffs signed by the defendant, but with the words "guano

not included in this'' added by the defendant. This alteration was objected to by the plaintiffs, and the addition of these words has been a source of dispute between these parties ever since. The instrument has been in the possession of plaintiffs ever since. Defendant has drawn bills on the plaintiffs for money, and they have paid them nearly up to the amount of $7,000, for which the written instrument provided. I am inclined to think that the paper, as amended by the defendant, is the true contract, and that the defendant having acted on it and drawn money upon it, should now be estopped to deny that there was a written agreement, as required by law, to validate the ten per cent. interest. If there was any agreement, it was this written agreement.

I am by no means sure that the word "charge" in the Statute does not mean something more than a mere entry on a factor's book of the ten per cent. interest as an item of the account, and that such an entry alone, even coupled with a demand of payment in an action, can taint the whole account with usury, in the absence of *some agreement* on the subject between the parties. This action has, then, been brought on demands not tainted with usury, unless it be that the dealings between plaintiffs and defendant constitute one continuous transaction for years, commencing, say, in 1881 and ending in 1888, during which latter year occurred the transaction here sued on. I concur with the referee in the view that they were not continuous transactions. Each year's contract stood for itself, and was in pursuance of a special agreement, though balances were by special agreement carried forward upon an adjustment and settlement of the accounts for the year. Their dealings were not continuous, but successive and separate and distinct. Each year stood for itself.

This note for $1,682.63–100 was given for the balance due at the close of 1887, and was accepted in full settlement and payment of the old accounts, and its payment provided for in the terms of agreement for 1888. It is as much payment as so much money would have been. It is in payment of the debt, and the amount considered as so much money advanced in the special arrangement between the parties for the year 1888 which

is in writing. Upon the supposition, however, that this note was the representation of usurious transactions, then it cannot affect the other transactions for the year, and taint them with usury, unless they have been connected by some usurious contracts, which I have concluded did not otherwise exist. See *Utley* v. *Cavender*, 31 S. C., 284–289. The payments for the year 1888 were more than sufficient to pay this note and interest, and plaintiffs have a right until judgment so to *apply the payments* made in the absence, as here, of any direction given by the debtors at the time of payment. *Thatcher & Co.* v. *Massey*, 20 S. C., 549.

All the usurious interest having been paid or extinguished by a proper application of the payments, and this action having been brought, not upon the original usurious contract (as is alleged), the defendant may have a separate action for double the *excess* of interest over seven per cent., but he cannot have a counter-claim in this action. If this note was usurious, it has been paid. My conclusion, from an examination of the cases of *Hardin* v. *Trimmier*, 27 S. C., 111, and *McCown* v. *McSween*, 29 *Id.*, 134, is that double the excess of interest may be recovered on notes dated either before or after the act of 1882, either in a separate action or as a counter-claim *in an action on the usurious debt.* Up to seven per cent., if once paid, the interest may become a credit on the note or other usurious contract, but cannot otherwise be recovered, either as counter-claim or in a separate action. In *Hardin* v. *Trimmier, supra,* the action was brought for the whole amount of double the interest and excess. The Supreme Court *limited* the recovery to double the *excess.* I do not see how the amendments of 1882 can in any way affect the question. The only changes made by it are as to the written agreement and the right to recover what is now held to be only double the excess of interest over seven per cent. Assuming, then, also, that defendant's construction of the written agreement is the right one, and that *guanos were not included,* there is no evidence before the court upon which there can be any estimate of damages for plaintiffs' failure to perform his contract upon which the court can render a judgment for damages.

The defendant is also liable to plaintiffs for the stipulated amount of damages for the non-shipment of cotton as by the terms of the agreement. My attention has not been called to any error of calculation by the referee, and I, therefore, accept his figures and compute the interest accordingly.

It is, therefore, ordered and adjudged, that the plaintiffs have judgment for the sum of eight thousand nine hundred and ten 63-100 dollars and for costs.

The defendant appealed on the following grounds:

That his honor erred, it is respectfully submitted, in holding and adjudging:

(1) That there was a written agreement between plaintiffs and defendant for the year 1888, providing for the payment of interest at the rate of ten per cent. and for damages for the non-shipment of cotton.

(2) That defendant is estopped from denying that there was a written agreement for that year, as required by law, to validate the ten per cent. interest.

(3) That if there was no written agreement, the entry on plaintiffs' books of the ten per cent. charge and the demand for payment, in the absence of an agreement to pay interest at ten per cent., would not taint the account of 1888 with usury.

(4) That the action "has been brought on demand not tainted with usury, unless it be that the dealings between plaintiffs and defendant constitute one continuous transaction for years, commencing, say, in 1881 and ending in 1888."

(5) That the transactions between plaintiffs and defendant, commencing in 1881 and ending with the beginning of 1889, were not continuous, but successive, separate, and distinct. That each year stood for itself, and was in pursuance of a special agreement.

(6) That the note for $1,682.63 was given and received as payment in full of the balance due by defendant on the transactions of 1887, and was "as much payment as so much money would have been."

(7) That even if this note was the representative of usurious transactions—in other words, was usurious—it could not affect

the other transactions for the year 1888, and taint them with usury.

(8) That this note, under the law governing the application of payments, must be held to have been fully paid and satisfied.

(9) That in this action defendant has no right to counter-claim for double the excess of usurious interest over seven per cent. paid since the act of 1882, amending the usury law of the State.

(10) That "double the excess of lawful interest may be received on notes dated either before or after the act of 1882, either in a separate action or as a counter-claim in an action on the usurious debt."

(11) That up to seven per cent., if once paid, the interest may become a credit on the note as other usurious contract, but cannot otherwise be recovered, either as a counter-claim or in a separate action.

(12) That defendant is liable for the amount of the damages claimed by the plaintiffs for non-shipment of cotton, and this even upon the assumption that guanos were not to be included in the amount to be advanced.

(13) That plaintiffs should have judgment for the sum of $8,910.62 and costs.

That his honor erred in not holding and adjudging as follows:

(14) That there was no agreement between plaintiffs and defendant, whereby defendant bound himself to ship to plaintiffs, during the cotton season of 1888, for sale on commission, at least 400 bales of cotton, with damages for non-shipment, as claimed in the complaint, and unwritten agreement for the payment of interest at the rate of ten per cent. per annum on the amount to be advanced during that year, including the balance brought over from the year 1887.

(15) That if there was an agreement for the shipment of cotton for the year 1888, defendant is not liable for damages for non-shipment, inasmuch as the condition was, therefore, not performed by plaintiffs, and there was failure of consideration.

(16) That the transactions between plaintiffs and defendant, from the commencement to the close of their connection and relation as cotton factors and country merchant, were continu-

ous and connected, and sufficiently so to entitle defendant to the counter-claims and other defences set forth in his answer.

(17) That the drafts and notes executed by defendant, causing yearly balances, were in no instance given, accepted, understood, or intended as payment, and such is the correct legal conclusion from the undisputed facts of the case.

(18) That defendant is entitled to judgment against the plaintiffs for the amount of the counter-claims set up in his answer, and to the elimination of all interest in the account between the parties, from its commencement in 1881 to its close.

(19) That defendant is at least entitled in equity to have the account from its commencement restated, all interest in excess of seven per cent. eliminated, and plaintiffs allowed judgment only for the balance that may be found after the account has been thus purged of usury.

(20) That on the assumption that there was a written agreement to pay ten per cent. on the advances of 1888, the interest of that year is usurious by reason of the compounding of interest by plaintiffs.

(21) That the parties never having purged the transactions of usury, but having carried over balances tainted with usury, every part of the account from 1881 to its close is affected with usury.

Plaintiffs gave notice of the following additional grounds in support of the judgment:

1. That the written agreement prepared by Witte Bros., and sent to Abram Weinberg for his signature, was the true contract between the parties, and that Abram Weinberg assented thereto. 2. That Abram Weinberg, having received notice from Witte Bros. that they would not consent to the alteration which he had proposed to the said written agreement, and continuing to act thereunder, is now estopped from denying the same. 3. That as Abram Weinberg asks the interposition of the court, in its equity jurisdiction, to open and restate a settled account, that he may interpose a plea of usury, the court should first require him to do equity by tendering to Witte Bros. the amount of his actual indebtedness to them, with legal

interest thereon. 4. That having failed and neglected to do equity, the court should refuse the relief now asked for by Abram Weinberg.

*Messrs. Boyd & Brown,* for appellants.

*Messrs. Buist & Buist* and *Nettles & Nettles,* contra.

April 21, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action at law, brought for the recovery of money by Witte Brothers, factors and commission merchants, of Charleston, against Abram Weinberg, of the County of Darlington. The complaint contained three causes of action:

*First.* Upon a promissory note, of which the following is a copy: "Darlington, S. C., 23d January, 1888. $1,682.63. Eleven months after date I promise to pay to the order of Witte Brothers, sixteen hundred and eighty-two 63–100 dollars, at their office in Charleston, S. C., with interest from date until paid, value received, at the rate of ten per cent. per annum.

"(Signed) A. WEINBERG."

*Second.* That during the year 1888, the plaintiffs made advances in money and fertilizers as factors to the defendant at his request, as specified in a "statement thereof hereto annexed, and amounting to the sum of $6,696.17," together with the further sum of $451.70, interest on the said account at the rate of ten per cent. per annum from the date of advancement, which said rate of interest the said defendant agreed in writing to pay, as follows: "In consideration of advances to be made me by Witte Bros. during the season of 1888, to the amount of seven thousand dollars, which includes the balance which may be due them on the transactions of 1887, for which balance I will give my note when the account is closed, I engage to ship them for sale on a commission of 2½ per cent. on all cotton which may come under my control, guaranteeing that an amount not less than 400 bales shall be shipped. I also agree that interest on all advances made me is to be charged at the rate of ten per cent. per annum. *Guano not included in this.*

"(Signed) A. WEINBERG."

*Third.* That as above set forth, the defendant agreed to ship to the plaintiffs for sale, on a commission of 2½ per cent., all cotton which should come under his control during the year 1888, and guaranteed that the number of bales of cotton so shipped should not be less than 400. But the defendant made default, and failed to ship 364 bales on account thereof. And they prayed judgment for $7,508.09, with interest from January 12, 1889, at the rate of ten per cent. per annum.

The defendant in his answer alleged that the note constituting the plaintiffs' first cause of action, and the factors' account constituting the second cause of action, are but portions of a factors' account, commencing with the beginning of the year 1881 and ending with the commencement of the year 1889, and forming one continuous transaction between plaintiffs and defendant; that plaintiffs were defendant's factors in the city of Charleston, from whom he, as a country merchant, obtained his supplies and advances, and to whom he shipped his cotton for sale on commission; that from the beginning of the year 1881, there has been one continued and unbroken account;  *   *   * that the note constituting plaintiffs' first cause of action was executed and received as a mere memorandum and voucher of the amount claimed to be due on said account on January 23, 1888; that the defendant is entitled to have the said account, beginning in 1881 and ending January, 1889, restated, and the balance ascertained, after excluding therefrom all items of interest.

For a counter-claim to plaintiffs' causes of action, the defendant alleges that on said portion of plaintiffs' account included in exhibit A, in accordance with the said usurious agreement, plaintiffs charged and the defendant paid plaintiffs' interest on all advances therein included, at a rate of interest greater than that allowed by law, and that the excess of interest so charged and received over the amount of interest allowed by law amounts to the sum of $1,349.94. Wherefore the defendant demands judgment against the plaintiff for the sum of $2,699.88, the same being double the amount of the sum charged and received in excess of interest at the legal rate. For a second counter-claim, the defendant alleges and makes the same plea as to the

usurious interest paid on the accounts, which are missing, the plaintiffs having refused to furnish copies of the same.

For a further defence, the defendant says that, under the agreement for advances, the plaintiffs agreed and bound themselves to advance to the defendant the sum of $7,000, exclusive of fertilizers, which plaintiffs agreed to furnish to defendant. The plaintiffs failed to carry out their said agreement, declined to advance the said sum of $7,000, exclusive of fertilizers, and refused to pay the drafts of defendant for the balance of which he was entitled under said agreement, whereby this defendant sustained damages in the sum of $300, which said amount this defendant claims shall be deducted from whatever may be proved against him, under plaintiffs' third and last cause of action, &c.

It does not appear in the record how or at whose instance he was appointed, but it does appear that E. O. Woods, Esq., was appointed special referee. He took the testimony, and made a report remarkable for its clearness and fullness. He found as matters of fact:

"*First.* That Abram Weinberg obtained advances from the plaintiffs, Witte Bros., doing business as factors and commission merchants, from the year 1881 to 1888, inclusive, the said defendant making each year a separate and distinct agreement for the advances to be made each year during said period.

"*Second.* That there existed between the plaintiffs and the defendant, during the course of their business dealings, no agreement whatever to make advances for a longer period than one year.

"*Third.* That at the end of each current year balances were struck, and the defendant executed to the plaintiffs his negotiable promissory note in settlement of the balance due to the plaintiffs for said year's advances, which amount was to form a part of the advances agreed to be made for the year following.

"*Fourth.* That as above set forth separate and distinct agreements were made for each year for the period above named, and that the defendant, prior to the commencement of this action, paid each and every of the said notes, and that said notes as they were liquidated were returned to the defendant

by the plaintiffs, save and except the note for $1,682.63, being the balance due for the year 1887, and which became a part of the advances agreed to be made for the year 1888.

"*Fifth.* That during the year 1888, the plaintiffs made advances to the defendant in the sum of $6,696.17, and that the balance remaining unpaid, in addition to the note above mentioned, upon his factorage account, the sum of $4,653 for said year; upon which said amount and the amount of said note the defendant agreed in writing to pay interest at the rate of ten per cent. per annum.

"*Sixth.* That on January 23, 1888, the defendant executed and delivered to the plaintiffs an agreement in writing, whereby, in consideration of advances to be made by the plaintiffs to the defendant in the sum of $7,000, the said defendant promised and agreed to ship to the plaintiffs, during the season of 1888, all cotton which should come under defendant's control during the said year for sale by the plaintiffs, on a commission of $2\frac{1}{2}$ per cent., and guaranteed that the number of bales so shipped should not be less than four hundred; and that defendant only shipped thirty-six bales of cotton in pursuance of said agreement.

"*Seventh.* That on January 23, 1888, the defendant executed and delivered to the plaintiffs his promissory note, whereby he promised to pay, eleven months after date, to the order of plaintiffs, $1,682.63, with interest from date until paid at the rate of ten per cent. per annum, and that no part of said note has been paid."

And the said referee held as matter of law, that the plaintiffs were entitled to recover (1) on the note set forth in the first cause of action, $1,682.63, with interest; (2) the additional sum of $4,653.40, the amount due upon the factorage account for the year 1888; and (3) $451.70, interest thereon charged from the date of advancement, as per agreement, at the rate of ten per cent. per annum—aggregating $6,951.08, with interest from January 12, 1889, and $356.92, liquidated damages, for non-shipment of cotton, &c.

To this report the defendant filed numerous exceptions, upon which the case came up for hearing before his honor, Judge

Fraser, who substantially concurred with the referee both in his findings of fact and his rulings of the law. From his decree the defendant appeals to this court upon numerous exceptions, which are all printed in the record.

This action for money, certainly at its commencement, was one at law, pure and simple. If it continued to be such, the decree of the Circuit Judge, as to all matters of fact, would stand in the place of a special verdict of the jury, and this court would have no right to review the testimony. *Adickes* v. *Allison & Bratton*, 21 S. C., 245. But as the defence here seems to partake somewhat of the nature of a proceeding in equity, asking discovery and to reopen successive accounts, seemingly stated, settled, and paid, we will give him the benefit of having it considered as an equitable defence, in which this court has the jurisdiction to review and reverse the findings of fact. But so considered, the rule is, that this court will not disturb findings of fact by the referee, which have been concurred in by the Circuit Judge, unless the clear result of the testimony points manifestly to a different conclusion, or there is no testimony to support them. As was said in the case of *Callum* v. *Rice, Administrator*, 35 S. C., 557: "While this court may review and reverse findings of fact in an equity case, it is perfectly well settled that it will rarely disturb a finding of fact in which the Circuit Judge concurs with the master or referee. Some such rule is well nigh a necessity. There must, in the nature of things, be an end of controversy," &c.

Now, in this case the referee found, and the Circuit Judge concurred with him, "that the dealings of these parties, plaintiffs and defendant, were not continuous transactions, but that each year's contract stood for itself, and in pursuance of a special agreement, though balances were, by special agreement, carried forward upon an adjustment and settlement of the accounts of the year. Their dealings were not continuous, but successive, separate, and distinct. This note for $1,682.63 was given for the balance due at the close of 1887, and was accepted in full settlement and payment of the old accounts, and its payment provided for in the terms of agreement for 1888. It is as much payment as so much money

would have been. It is in payment of the debt, and the amount considered as so much money advanced in the special arrangement between the parties for the year 1888," &c. Under the rule propounded above, we can not say that this finding of facts was erroneous. Whether one security is taken in satisfaction of another, is a question of intention, and the acts of both these parties, and especially of the defendant, in destroying the old notes, and in allowing the notes at the beginning of each year to be put in by the plaintiffs among the advances as their property, show that he thought he owed nothing but the notes. The defendant himself says in the "memorandum" agreement, "for said balance (1887), I will give my note when the account is closed." Under these circumstances, there was no conceivable reason for keeping them open, and we have no doubt that, at the time, payment and satisfaction was intended by both parties. See *Bolt* v. *Dawkins,* 16 S. C., 198; *Ex parte Williams,* 17 *Id.,* 396.

As we are bound to take it as established, that there was no continuous agreement between the parties from the year 1881 to 1887, inclusive, this action for the dealings of 1888 stands alone; and the next question is, whether there is any *inherent usury* in the causes of action embraced in the plaintiffs' complaint. The law declares, that "no greater rate of interest than seven (7) per cent. per annum shall be charged, taken, agreed upon, or allowed upon any contract arising in this State, for the hiring, lending, or use of money or other commodity, except upon written contracts, wherein, by express agreement, a rate of interest, not exceeding ten per cent., may be charged," &c. (1) The first cause of action is the note of January 23, 1888, for $1,682.60. It conformed to the law in expressly stating, "with interest from date until paid, value received, at the rate of ten per cent. per annum." We suppose that, considered as money, there was no usury in the note.

(2) Then as to the second cause of action, upon the other advances of 1888, made in money. The "memorandum" agreement states as follows: "I also agree that interest on all advances made me is to be charged at the rate of ten per cent." This would seem, also, to be a compliance with

the law. It is, however, suggested that the "memorandum" agreement never took effect, or was annulled by the amendment ("guanos not included in this") which the defendant made to it before he signed and enclosed it back to the plaintiffs. It is true that the plaintiffs did not understand the guano matter as the defendant did, and they had some correspondence upon the subject, but the defendant signed the paper as amended, and proceeded to take advantage of its provisions by drawing on the plaintiffs and receiving advances under it to the amount of $6,696.17, only $303.83 short of the whole amount of $7,000 agreed to be advanced, and for that shortage, in our view of the case, he now claims damages. Under these circumstances, surely the defendant can not now be heard to deny that the contract was binding upon him, as to the rate of interest, upon the very advances drawn alone by virtue and authority of that "memorandum" agreement. Estoppel is very well defined to be "an admission of so conclusive a nature, that the party whom it affects is not permitted to aver against it or to offer evidence to controvert it." 2 Sm. Lead. Cas., 778; and the *Duchess of Kingston's Case;* Big. Estop., 556.

But, on the assumption that there was a written agreement, it is further urged that the interest on the advances of 1888 was usurious by reason of the compounding of the interest by the plaintiffs. It does not appear that this point was made in the court below, or that it was considered by the referee or Circuit Judge. But, waiving that, it has not been made to appear that the plaintiffs charged more than at the rate of ten per cent. per annum on the money advances of 1888.[1]

The third cause of action. As to the liquidated damages claimed for the non-delivery of cotton, according to the terms

[1] The point made and here considered is that a balance was struck on April 15, 1888, and interest charged on such balance to the end of the year; but the account shows, that while the interest charged in the account up to April 15, amounted to $113.93, the credits aggregated $549.37. That is to say, that while the advances up to April 15, including the principal of the note, aggregated $7,578.80, the balance carried down as the interest-bearing fund on that day was only $7,143.36.—REPORTER.

of the agreement, there is no pretence of usury here; and we concur with the Circuit Judge, that, according to the authorities, the plaintiffs are entitled to recover. See *Norwood* v. *Faulkner*, 22 S. C., 371; *Williams* v. *Vance*, 9 *Id.*, 374; *Devereaux* v. *Champion Cotton Press*, 17 *Id.*, 66.

Now, inasmuch as the transactions of 1888 are cut off from the transactions of these parties in the years prior to 1888, and, as we have seen, there being no original usury in these transactions, the final question is, whether the defendant can now recover back by counter-claim in this action any money he may have paid the plaintiffs in excess of the legal interest in the transactions of the different years prior to 1888. It seems to us that the Circuit Judge was right in holding that it could not be done, under the general law as to counter-claims (section 171 of the Code), for the reason that said counter-claim did not arise out of the transaction set forth in the complaint, "or was connected with the subject of the action;" nor under the second section of 1882, which provides that "any person who shall receive as interest any greater amount than is herein provided for, shall, in addition to the forfeiture herein provided for, forfeit, also, double the sum so received, to be collected by a separate action, or allowed as a counter-claim to any action brought to recover the principal sum." The expression is a peculiar one, not entirely free from obscurity; but, as we understand it, "the principal sum," as here used, means the debt out of which the usurious interest sprung. We do not think that this action can properly be considered as brought to recover "the principal sum," in the sense of the act.

The defendant, for a further defence, contends that he has been damaged to the extent of $300, by reason of the failure of the plaintiffs to advance him the whole amount stipulated for by the deficiency of $303.83. The referee reported, "that there is an entire absence of proof to sustain damages in the amount claimed by the defendant, or, indeed, in any sum whatever." In the account the plaintiffs only charged the amount actually advanced, $6,696.17. There being no evidence upon the subject, there is no way of correcting

it, if the court below was in error. We concur upon all the questions made with the Circuit Judge.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE, *concurring.* The questions underlying this appeal have occasioned a difference of opinion between the members of this court, and I have, therefore, deemed it proper to express my own impressions in a separate opinion.

It has been agreed that the concurrence in the finding as a matter of fact by the Circuit Judge and special master that the transactions of the plaintiffs and defendant, beginning in 1881 and ending in 1888, were distinct in each year composing that period, and are binding upon this court. It has been suggested, however, that such annual transactions, by the dealings of the parties with each other, form, so to speak, a continuous transaction in law, and may, therefore, fall under the corrective power of this court. And this view has given rise to very considerable doubt as to the effects that may follow from such a conclusion. Thus, if this court is at liberty to scrutinize all the transactions between the plaintiffs and defendant from 1881 up to and including 1888, we must necessarily inquire into every item of the accounts during those years. The defendant has formally pleaded that usury permeated such accounts from the beginning of his dealings with the plaintiffs as his factors. During those years, up to the beginning of 1887, no written agreement as to interest on the factors' accounts was made by the parties, and yet interest at the rate of ten per cent. was charged and paid. If these dealings were continuous, therefore, it is suggested, it would be in the power of the defendant to plead successfully the defence of usury thereto.

I have always felt that a distinction ought to be made between those transactions where the interest charged was within the legal limits and those beyond such legal limits. To make my meaning plain: that if parties charged and paid before 1889 ten per cent. interest, or eight per cent., or nine per cent., that such parties stood in a better light, in the eyes of the law, than where twelve, or fifteen, or eighteen per cent. interest was

charged or paid, and that to effectuate this distinction any writing, signed by the party, for interest within the legal rate should be seized upon to protect the claim of interest. The factors in this case charged ten per cent. up to 1888. At the end of each year *notes* were given by the defendant for such annual balances, including such interest. Such rate of interest, being within the legal rates, should be made effectual between the parties. Many contracts required by law to be in writing are not put in writing at the moment "the minds of the parties meet" in the contract, yet being afterwards reduced to writing, in accordance with law, effect is given them as if originally in writing. So that even under the view of this case as a continuous contract running from 1881 up to 1888, I should hold the execution of the note for the amounts due at the beginning of each year to be a compliance with the law, as there was always a considerable amount then due.

But I do not hold to the conclusion that these annual advances by these factors were a continuous transaction from 1881 to 1888. On the contrary, when the defendant gave his note, on the 23d day of January, 1888, for the sum of $1,682.63, which was the exact amount then due by him to the plaintiffs, and on which he agreed to pay them interest at the rate of ten per cent. per annum, the previous accounts betweeen the parties was then closed. *Loan and Exchange Bank* v. *Miller Brothers,* Mss. Dec.[1] And he had agreed in writing in 1887 to pay interest at ten per cent. per annum on the items that entered into and made up the debt for which this note was given.

As to the open account, I agree that by the paper the defendant signed, he became bound to pay such interest on the balance due on such open account. It has seemed to me that there might be some force in the reflection, that what the plaintiffs and defendant agreed to in Charleston at the first of the year 1888, was the contract between them, and that the paper that Weinberg afterwards signed embodied only a part of the stipulations of such contract really made before the paper was prepared for his signature. However this may be, he signed

[1] Filed April 19, 1893, and to appear in a future volume among the cases of November Term, 1892.—REPORTER.

this paper agreeing to pay ten per cent. interest. This paper he sent to Witte Brothers. This paper they retained. And now he is bound, hand and foot, as to the matter of interest.

I will pursue these matters no further, as I concur in the opinion of Mr. Justice McGowan.

MR. CHIEF JUSTICE McIVER, *dissenting.* Being unable to concur in the conclusions reached by Mr. Justice McGowan, I propose to indicate briefly the grounds of my dissent. Usury is the main defence set up by the defendant in his answer, and to that I shall mainly confine my attention. Now whatever differences of opinion may exist as to the propriety and policy of usury laws, and whatever may be the view one might be disposed to take of the conduct of a person who, after obtaining a loan of money from another on certain specified terms, seeks to avoid the performance of his contract by invoking the protection of the usury laws, yet these are not matters proper to be considered by a court, which is bound to disregard all such considerations, and administer the law as they find it written, without questioning its propriety or undertaking to weaken its force by strained construction.

Under the law as it stood at the time the transactions here under consideration took place, it was unlawful for any person to charge, agree upon, or take a greater rate of interest than seven per centum per annum, except where there is a contract in writing whereby the parties by express agreement fix a greater rate, not exceeding ten per centum per annum. So that the practical inquiry here is, did the parties contract in writing for the payment of a greater rate of interest than seven, and not exceeding ten per centum, on the contracts here sought to be enforced? First, as to the note upon which the plaintiffs base their first action. While it is quite true that this note does contain an express stipulation for the payment of interest at the rate of ten per cent., yet this does not conclude the inquiry; for if that note was given as a substitute for, or in renewal of, a previous contract tainted with usury, it became affected with the same taint. *Clark* v. *Hunter*, 2 Speer, 83; *Quarles* v. *Brannon*, 5 Strob., 151, besides other cases which might be cited.

The undisputed fact is that the note in question was given as evidence of the balance due from the previous (1887) year's transactions, and while the testimony does show that there was a contract in writing whereby the defendant agreed to pay ten per cent. interest on all advances made during the year 1887, yet the accounts offered in evidence also show that the first item charged in the account for 1887 was the balance due from the transactions of the preceding year (1886), as to which I do not find any contract in writing to pay any specified rate of interest, and which, therefore, under the law could only bear interest at the rate of seven per cent., although a greater rate of interest seems to have been charged. To the extent, therefore, of this excess of interest, the balance due on the transactions of 1887, as well as the note which it represents, became tainted with usury.

I cannot accept the inference drawn by the referee and the Circuit Judge from the undisputed facts, that each year's dealings were separate and distinct transactions; but, on the contrary, it seems to me that the irresistible inference is that it was one continuous transaction from beginning to end. The manner in which the plaintiffs kept the account shows this conclusively. There is not a single instance in which the account for any one year was closed even by note; but, on the contrary, the balance due at the close of each season's operation, instead of being entered on the account as closed, or settled by note, is carried forward *as a balance* to the next year's account—thus inseparably connecting one year's account with the other. The notes taken at the close of each season's operations were manifestly not designed as payment or settlement, but simply as evidences of the amount then due—to use the language of one of the plaintiffs in his testimony, "Notes were given to prove balance then due by Mr. Weinberg to us." The object, doubtless, was to put the balance in such a shape as would make it more easy of proof—so that, instead of being called on to prove the items of the account, the plaintiffs could simply produce the note as evidence of the amount then due.

Now if, as is admitted by the plaintiffs in their reply, usurious interest was charged and received between the 11th of January,

1883, and the 1st of September, 1886, it follows that such usurious interest, to some extent at least, must have entered into the balances carried from year to year, and must, therefore, have entered into the note which constitutes the basis of plaintiffs' first cause of action. Indeed, according to the testimony of Rogers, if the usurious interest previously charged were eliminated from the account, there would be not only no balance in favor of the plaintiffs, but a balance in favor of the defendant. But the Circuit Judge holds that, even if this note was made up in part of usurious interest, it may be regarded as paid, as the plaintiffs have a right to apply the amounts paid during the year 1888 to the payment of said note, and as such payments would be sufficient, if so applied, to extinguish the note, the note may be regarded as paid. A sufficient answer to this is that the plaintiffs not only do not make any such claim, but, on the contrary, they allege in their complaint, and prove by their testimony, that no part of the note has ever been paid.

Next, as to the open account for 1888. It is conceded that interest is charged in that account at a greater rate than seven per centum per annum, and unless there was a contract in writing by which the defendant agreed to pay such greater rate, it is clear that the account contains usurious interest. I, therefore, propose to consider next whether there was such a contract in writing. While it is quite true that an agreement in writing to that effect was prepared by plaintiffs, though not signed by them, and sent to defendant for his signature, it is equally true that defendant did not sign the contract as prepared by plaintiffs, but did sign it after adding thereto the following words: "Guanos not included in this;" and it is equally certain that plaintiffs explicitly refused to assent to the contract as thus added to. It seems to me, that it follows, necessarily, that there never was any "meeting of minds," never any contract in writing. The plaintiffs proposed and agreed to the contract *without* the words added by the defendant, and the defendant refused to sign or assent to the contract unless those words were added. In the face of these indisputable facts, I do not see how it is possible to say that there ever

was any contract in writing for the payment of interest at the rate of ten per centum per annum on the advances made during the season of 1888. The conclusive test of this is, that if the defendant had sued the plaintiffs for some breach of the alleged contract, based upon the words which he had added to the paper without the assent of the plaintiffs, it is quite certain that he could not recover, for the obvious reason, that the plaintiffs had never assented to the proposed contract with these words added, and were not, therefore, bound by such words.

But, as I understand it, while there is no distinct admission that there was not, in fact, any contract in writing, yet the contention seems to be, that the defendant is estopped from denying that there was such a contract, by his subsequent conduct. I am unable to discover any element of an estoppel in this case. It does not appear that the plaintiffs were induced to change their position or to do any act upon the assumption that there was a contract in writing binding the defendant to pay interest at the rate of ten per centum per annum. It certainly cannot be said that they were induced to make advances to defendant upon the assumption that there was such a contract, for as early as the 27th of January, 1883, they were informed of the defendant's view of the agreement, and nearly all of the advances were made *after* that time—all but two of a comparatively small amount—and even after the proposed contract had been returned to Witte Bros., with the addition made by Weinberg, to which the plaintiffs never assented, they still continued to make advances to defendant to very large amounts. Indeed, in face of the undisputed fact, that defendant had been doing a similar business with plaintiffs for several years, without any written contract (except for the year 1887), in a very satisfactory manner, as stated by the plaintiffs in their letters to defendant, it is scarcely possible to conceive that the plaintiffs would not have made the advances to the defendant unless they had supposed there was a written contract; especially when to this is added the undisputed fact, that they continued to make advances, after they knew that defendant would not assent to the written agreement as proposed by the plaintiffs. If, then, there was no contract in writing for the payment of

interest at the rate of ten per cent., it follows, necessarily, that all interest in excess of seven per cent. is usurious.

There is, also, another view which shows usury in the open account, even if there was a contract in writing to pay ten per cent. The account having been made up to the 15th April, including interest to that date at ten per cent., and carrying forward the balance then due as the first item in the account for the remainder of the year, upon which interest is charged at the end of the year, will necessarily make the total amount of interest exceed ten per cent. on the amounts actually advanced, as may be seen by a simple calculation. While this mode of making up accounts by factors or commission merchants may be customary, it has not yet, so far as I am informed, been sanctioned by the courts. If an account for advances can be made up with semi-annual rests, no reason is perceived why it may not be made up with quarterly or even monthly rests, whereby the interest actually charged would exceed the rate agreed upon; that is to say, the person to whom the advances are made would, in fact, pay more than ten per cent. per annum (assuming that to be the amount agreed upon) on the money really loaned or advanced to him.

So, also, if there was no contract in writing, it follows that the claim for short shipments of cotton could not be allowed, for I do not find any evidence to support such a claim outside of the alleged agreement of 23d January, 1888, which, according to my view, never became a contract binding upon either party.

Without, therefore, undertaking to discuss the several questions which have been raised in this case, with anything like the fullness which their importance deserves, my object being more to indicate the grounds of my dissent than to vindicate them, I will proceed to state very briefly the conclusions at which I have arrived. All of the dealings between these parties, from 1881 to 1888, inclusive, constituted one continuous transaction, the balances due each year being carried forward into the account for the succeeding year, thus inseparably connecting them together; that there never was any settlement of any of these accounts, either by payment or otherwise, the

notes taken from time to time not being intended either as payment or settlement, but simply as convenient modes of proving the balances carried forward each year *as balances and not as notes;* and that the present action is really an action to recover the final balance due at the close of the business. Hence, if there was any usurious interest charged in the accounts for the several years (as it is admitted there was in some of the years), such usury permeated the whole account and taints the final balance. Hence, I think the plaintiffs are only entitled to recover the amount of the advances made to the defendant, less the credits to which he is entitled, without interest or costs.

But I do not think that the defendant is entitled to his counter-claim, for the reason that it cannot properly be said that he has paid any usurious interest at all, and the statute provides "that any person * * * who shall receive *as interest* any greater amount," &c., shall be liable to the penalty prescribed. Nor do I think that the defendant is entitled to recover any damages for the failure of the plaintiffs to advance to him the full sum of seven thousand dollars, exclusive of fertilizers, for the reason that such claim rests entirely upon the proposed contract of 23d of January, 1888, which, according to my view, never went into effect.

I desire to add, however, that I have not undertaken to question any of the findings of fact, either by the referee or Circuit Judge, but only the inferences which they have drawn from such facts. Indeed, most, if not all, of the material facts are undisputed, and the only controversy is as to the inferences which should be drawn from such facts.

I may add, also, that I have not deemed it necessary to consider two of the positions taken by respondents' counsel in their argument here, upon which much reliance seems to be placed: 1st. That when a party asks the aid of equity in opening a settled account, he must offer to do equity himself. 2d. That a note is a higher security than an open account, and hence, when the notes were taken, they operated as satisfaction or payment of the open account. As I do not consider that there ever was a settlement between these parties, there seems

71—37

to be no reason why the law as to opening a *"settled"* account should be considered. The second position, that a note is a higher security than an open account, and, therefore, the note operated as an extinguishment of the lower security, rests upon the unfounded assumption that a note, not under seal, is a higher security than an open account. My understanding is, that they are both simple contracts, and are of the same grade, one occupying no higher rank than the other. The only difference is that the note is more easy of proof than the open account.

Judgment affirmed.[1]

---

[1]This completes the cases of November Term, 1891.—REPORTER.